## FLORENCE P. EGGLESTON v. KELLER DRUG COMPANY AND ANOTHER.

120 N. W. (2d) 305.

March 8, 1963—No. 38,664.

*Carroll, Thorson, Anderson & Cronan* and *Frank X. Cronan,* for appellants.

*Robins, Davis & Lyons* and *John B. McCarthy,* for respondent.

ROGOSHESKE, JUSTICE.

Defendants appeal from an order setting aside a stipulation of settlement of plaintiff's personal injury action.

Plaintiff's action arose out of an automobile collision in December 1958. An automobile, owned by defendant Keller Drug Company and driven by defendant Keith Keller, collided with the rear of plaintiff's automobile. Her complaint, dated March 13, 1959, alleged damages of $75,000 for "permanent and severe injuries to her person and property, including but not limited to whiplash-type injuries to her head, neck and back."

When the case was called for trial on the morning of February 1, 1961, plaintiff made demand for and received the detailed written reports of defendants' pretrial medical examinations conducted pursuant to Rule 35 of Rules of Civil Procedure. The jury was impaneled, but after the noon recess negotiations for settlement were undertaken. Defendants made an offer of $4,000 which was considered by plaintiff and her attorney for one hour. At 3 p. m., after the jury and the judge had waited more than an hour, a stipulation of settlement was dictated into the record in the court chambers in the presence of the judge. Thereby it was unequivocally agreed by counsel that plaintiff's claim was compromised for the total sum of $4,000 and that, upon payment by defendants, a release from plaintiff and a stipulation of dismissal with prejudice would be furnished, executed, and filed. The jury was thereupon informed of the settlement and dismissed.

Defendants forwarded a draft and the settlement instruments to plaintiff's attorney. Over 4 months after the agreement was reached, during which time repeated requests to carry out its terms were not honored, defendants moved for entry of judgment. The day before this motion was to be heard, plaintiff served her motion to set aside the stipulation, returning the draft and the unsigned release and stipulation of dismissal to defendants' attorneys.

Plaintiff makes no claim of fraud or lack of good faith, basing her motion on her assertion that she agreed to the settlement without a full comprehension of how the anticipated testimony of one of defendants' doctors would affect the amount of her recovery for a claimed hearing impairment, which she was advised by her doctor in September 1960 was an additional injury sustained in the collision. She as-

serts that she was unable to locate her doctor while settlement negotiations were pending. Thereafter she was advised by him that the report of one of the doctors who had examined her for defendants concerning her claim of a hearing loss was "consistent with and complementary to" her doctor's findings and examinations. It is her reliance on this opinion that prompted her motion to vacate the settlement agreement. She concedes that, except for the injuries to her hearing, the settlement is not improvident, but claims that in view of those injuries it was "meager."

After a hearing, the court denied defendants' motion and granted plaintiff's motion to vacate, ordering the case reinstated on the jury calendar on condition that plaintiff pay to defendants $500 as "attorneys' fees, costs and disbursements." The trial court's reasons for the order are not disclosed by memorandum or otherwise.

The question presented is whether there exists any reasonable basis in the record before us to support the court's order. Our review of the record must be in the light most favorable to plaintiff to the end that we refrain from intermeddling with the discretionary power vested in trial courts.

The affidavit of plaintiff's doctor, a specialist in the field of otolaryngology, supports her claim that the accident caused her to suffer a hearing loss of 20 percent in the left ear and 30 percent in the right ear; and that, in his opinion, the report of the doctor who examined her for defendants was, "[f]rom a medical standpoint, * * * consistent with and complementary to" his own findings and examinations. Plaintiff, who since July 1959 has been an employee as well as a patient of her doctor, in her affidavit explains her reliance on this advice and her miscalculation in the absence of it. Defendants point out that there is no affidavit from counsel who represented her at trial supporting her assertion that during settlement negotiations he, as well as she, believed the medical testimony would be contradictory.

The affidavit of the ear specialist who examined plaintiff for defendants categorically states that the contents of his report clearly contradicts the opinions expressed by plaintiff's doctor. The pretrial report of the other doctor who examined plaintiff for defendants, princi-

pally with respect to her claims of a neck and back injury, was made following two examinations—the first one in May 1959—and declares, "I do not see how it is possible for an individual to sustain a hearing loss as a result of such a minor injury." The affidavit of the specialist in ophthalmology and ototomyology to whom plaintiff was referred by defendants' first examiner declares that his opinion expressed in his report was that plaintiff had suffered "no appreciable loss of hearing" in either ear as a result of the accident, that her hearing was within normal limits, and that his report was not "complementary" or "consistent" with the opinion of plaintiff's doctor but was obviously "diametrically opposed" to it. An examination of the report referred to in his affidavit compels us to conclude that any reasonable reading of it readily discloses the existence of inconsistencies which could hardly be more striking. It discloses a finding of a hearing loss measuring 3 percent in the left ear and 5 percent in the right ear, but declares, "This degree of loss is essentially within normal limits." The report concludes: "It is my feeling that there is a functional element here and I do not believe that there has been any aural damage as a result of the accident which this patient reports." The conflict in the pretrial medical opinions existed at the time the parties reached agreement to settle and still existed at the hearing on the motions.

Reduced to its simplest terms, plaintiff's contention is that, because the dispute concerning the import of this report is a medical question and her doctor insists there is no conflict between it and his own conclusions, the trial court was justified in relieving her from the settlement agreement. We know of no rule of law which permits upsetting a good-faith settlement, contractual in nature, because a claimant relies upon a doctor's declaration that medical opinions of the type here involved are not conflicting when the conflict is not only apparent but obvious.

Clearly this is not a mistake of fact but a mistake of judgment in placing unjustified reliance upon an opinion concerning the plain meaning of simple words. It is settled in this state that good-faith settle-

82

ments are favored and are presumed to be valid.[1] In Jallen v. Agre, 264 Minn. 369, 373, 119 N. W. (2d) 739, 742, we said:

"* * * There can be no doubt that a definite settlement of a lawsuit, under our decisions, will be enforced, absent fraud or collusion, mistake, or such an improvident agreement that it ought not to stand in equity and good conscience. The law favors settlement of litigation."

In this case there exists no mistake in fact, no concealment, no demonstrable inequity arising because defendants knew of plaintiff's claimed misjudgment of the import of their medical reports and took advantage of her, and no such improvidence as would justify setting aside this settlement. A mere claimed miscalculation of probable success at the hands of the jury amounts to no more than an effort to be relieved from an enforceable agreement because of dissatisfaction with one's prior judgment.

Furthermore, as we indicated in Rogalla v. Rubbelke, 261 Minn. 381, 112 N. W. (2d) 581, to allow a good-faith settlement arrived at in open court to be set aside, at what must be characterized as the whim of a party, not only would be unjust to the litigants whose reliance on such settlements should be encouraged, but would be a disservice to the dedicated efforts of trial courts to hear and determine the ever-increasing number of cases on jury calendars. Moreover, to upset settlements of the type involved upon subjective dissatisfaction of one litigant would overlook the waiting list of litigants who have equal rights to the services of our court.

Reluctant as we are to overturn the exercise of discretionary authority vested in trial courts, there exists in this case no reasonable support or explanation for the court's order; therefore, we are required to reverse with instructions to enter judgment for plaintiff pursuant to the stipulation.

Reversed.

[1] Schoenfeld v. Buker, 262 Minn. 122, 114 N. W. (2d) 560.